IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Sandra H. Manning, | ) | Civil Action No. 8:12-1478-DCN-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B)[2] and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of Defendant Commissioner of Social Security ("the Commissioner"), denying

Plaintiff's claims for disability insurance benefits ("DIB").  For the reasons set forth below,

it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

Plaintiff filed a claim for DIB on May 22, 2009, alleging disability as of January 14,

2009.[3]  [R. 141-148.]  The claim was initially denied on July 29, 2009 [R. 68-69 ], and was

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]A Report and Recommendation is being filed in this case, one  in which one or both parties declined to consent to disposition by a magistrate judge.

[3]Plaintiff previously filed an application for DIB in November 2006, alleging disability beginning December 15, 2001, due to complex regional pain syndrome (also known as reflex sympathetic dystrophy), myofascial pain disorder, fibromyalgia, degenerative disc disease of the left knee, and  obesity.  [R. 54, 56.] That application was denied by an ALJ on January 13, 2009.  [R. 51-62.] The Appeals Council declined Plaintiff's request for review and Plaintiff did not further appeal [R. 63-67], making the January 13, 2009 ALJ decision final and binding.

denied on reconsideration by the Social Security Administration ("the Administration") on October 8, 2009  [R. 70-71].  A timely request for hearing was made, and on October 12, 2010, Administrative Law Judge ("ALJ") Thomas G. Henderson held a hearing on Plaintiff's claim.  [R. 29-50.]  On October 23, 2010, the ALJ issued his decision that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act"). [R. 14-28.]

At Step 1,[4] the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2009, and had not engaged in substantial gainful activity during the period from her alleged onset date of January 14, 2009, through her date last insured of March 31, 2009.  [R. 19, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had severe impairments of reflexive sympathetic disorder of the left foot ("RSD"), myofacial pain disorder, fibromyalgia, knee pain and obesity.  [R. 19, Finding 3.]  The ALJ also found that Plaintiff had  a non-severe impairment of lumbar degenerative disc disease with radiculitis which developed after the claimant's date last insured, and that Plaintiff's previously medically determinable impairment of depression was also non-severe.  [R. 20, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 20, Finding 4.]  The ALJ considered Listings 1.00 and 11.00 while evaluating the claimant's musculoskeletal impairments and her RSD.  [R. 20.]  He also specifically considered whether the claimant suffered from peripheral neuropathies that meet Listing 11.14. [*Id*.]   Likewise, the ALJ considered the

---

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

effects of obesity, in accordance with SSR 02-1p, in formulating Plaintiff's residual functional capacity ("RFC"). [*Id*.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found that, through the date last insured, the claimant had the RFC to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).  [R. 21, Finding 5.] Specifically, the ALJ found that Plaintiff was able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally.  [*Id*.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform her past relevant work [R. 23, Finding 6]; however, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform [R. 23, Finding 10]. Consequently, the ALJ concluded Plaintiff had not been under a disability, as defined by the Act, from January 14,2009, the alleged onset date, through March 31,2009, the date last insured.  [R. 24, Finding 11.]

Plaintiff's request for Appeals Council review was denied on April 3, 2012.  [R. 1-4.] Plaintiff filed this action for judicial review on June 5, 2012.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and argues that (1) the ALJ erred in failing to afford great weight to Plaintiff's testimony regarding the intensity and degree of her pain; and (2) the Appeals Council erred in failing to follow the treating physician rule.  [Doc. 13 at 2-4.]  Plaintiff argues that the evidence

supports her complaints of pain in the intensity and persistence she has described. [*Id*. at 4.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ (1) reasonably evaluated Plaintiff's subjective complaints of pain; and (2) Dr. Mitchell's July 2011 letter submitted to the Appeals Council does not undermine the substantial evidence supporting the ALJ's decision. [Doc. 15 at 9-14.] The Commissioner contends that, since substantial evidence supports the final agency decision that Plaintiff did not meet the strict standard for disability under the Act, the decision should be affirmed, and Plaintiff's appeal should be denied. [*Id.* at 14.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

4

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

> In contrast, sentence six provides:

> > The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

8

the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.   *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.   *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a

9

claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

10

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's RFC[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

---

[6]RFC is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

12

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

13

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

14

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth

15

Circuit has rejected a rule which would require the claimant to demonstrate objective

evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and

ordered the Commissioner to promulgate and distribute to all administrative law judges

within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling

condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner

thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence.  If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability.  Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Credibility Determination**

Plaintiff first argues that the ALJ erred in not affording sufficient weight to her testimony regarding the intensity of her pain.  As noted, in evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step

17

process." *Craig*, 76 F.3d at 594. The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation omitted). During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's pain [or other symptoms] and the extent to which it affects [his] ability to work." *Id.* In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.*

"This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." *Craig*, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The Social Security Regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)    Your daily activities;

18

(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

### *Brief Medical History*

Between 2000 and early 2009, Plaintiff received care for a variety of medical issues, including reflex sympathetic disorder of the left lower extremity, degenerative changes in her knee, fibromyalgia, high blood pressure, depression, and obesity.  [R. 58-60, 173-83, 185, 194, 209-14, 218-22, 225-26, 275-81, 292, 318-19.]  In 2000, doctors implanted a spinal cord stimulator to treat Plaintiff's left leg symptoms [R. 58, 176, 218] and in mid-2005, Plaintiff underwent left knee surgery [R. 58-59].  Plaintiff's treatment regimen also included medication and injections.  [R. 58-60, 173-83, 185, 188, 194, 209-14, 218-22, 225-26, 275-81, 292, 318-19.]

In October 2008, Plaintiff reported fatigue, generalized pain, depression and a variable sleep pattern during her visit to Dr. Carlysle Barfield.  [R. 194.]  Plaintiff admitted she had not been using her CPAP machine. [*Id*.]  Dr. Barfield admonished Plaintiff to use

19

her CPAP machine and, the following month, adjusted her anti-depressant medication. [*Id.*] Also during October 2008, Plaintiff presented to Paul Mitchell, M.D., for re-evaluation of chronic pain symptoms.  [R. 209-210.]   Plaintiff said that her pain was moderately controlled on her current treatment regimen, and denied medication side effects.  [R. 210.] Plaintiff reported that she had cut back her use of extended release morphine medication (Kadian) to once a day; and Dr. Mitchell noted that "it seem[ed] to be as effective for her." [*Id.*]  In December 2008, Plaintiff reported that her spinal cord stimulator was "helping a good deal."  [*Id.*]  Dr. Mitchell found that Plaintiff was able to function and to perform small tasks and activities of daily living.  [R. 209.]

In March 2009, Plaintiff returned to Dr. Barfield and reported that she was sleeping well, with no fatigue, pain, or depression. [R. 193.]   Later that month, Plaintiff returned to Dr. Mitchell with no new complaints and reporting that she as "only using hydrocodone now." [R. 208.]  Notes indicate that Plaintiff walked with a limp but had an otherwise steady gait. [*Id.*]   Dr. Mitchell again found that Plaintiff's pain was moderately controlled without medication side effects, and that she could function and perform small tasks and activities of daily living. [*Id.*]

In April and May 2009, Plaintiff reported positive symptomatic pain relief from injections [R. 205-07], but in August 2009, Plaintiff told Dr. Mitchell that lumbar epidural steroid injections administered in June and July 2009 were only moderately effective.  [R. 246.]  In October 2009, Plaintiff returned to Dr. Mitchell for re-evaluation of chronic pain symptoms.   Dr. Mitchell found that Plaintiff's pain was only sometimes controlled on the current regimen without side effects.  [R. 244.]   Dr. Mitchell started Plaintiff on a trial of savella (fibromyalgia medication).  [R.  244.]   In January 2010, Plaintiff told Dr. Mitchell

20

that "her pain [wa]s out of control" and Dr. Mitchell prescribed a long-acting pain medication. [R. 297.] Plaintiff subsequently reported improved pain control. [R. 296, 331, 343.] In August 2010, Dr. Mitchell opined that Plaintiff needed a cane to walk, and ordered a cane with a four-point base (quad cane). [R. 338.]

### Plaintiff's Testimony

At the time of the hearing, Plaintiff testified that her current medications included morphine, nerve pain medication (gabapentin), narcotic pain medication (oxycodone), and non-steroidal anti-inflammatory gel (Voltaren Gel). [R. 39.] Plaintiff described medication side effects including drowsiness and excessive sleep. [R. 41.] Plaintiff estimated that she could sit, stand, and walk for about 15 minutes each before she had to change position. [R. 43-44.] Plaintiff testified that she spent much of the day laying down and that her husband pretty much did everything around the house, including cooking, housework, and yard work. [R. 41-42, 44-45.]

### ALJ's Credibility Analysis

During step 1 of the credibility analysis, the ALJ determined that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. [R. 22.] The ALJ provided the following summary of Plaintiff's medical evidence:

> The medical evidence of record reflects that the claimant's impairments did not worsen during the period in question, and may have improved. The claimant presented to her rheumatologist, Carlyle Barfield, M.D., in November 2008 and reported poor sleep and generalized pain, but no fatigue or depression. The claimant admitted she had not begun using the prescribed CPAP equipment. Dr. Barfield placed her on Effexor and advised her to use her CP AP equipment. At her next appointment on March 2, 2009, Dr. Barfield noted that the claimant was sleeping well and had no fatigue, pain or depression. (Exhibit B3F).

21

The claimant presented to Paul Mitchell, M.D., her treating physician at the Pain Clinic at Coastal Carolina Medical Center, for re-evaluation of her chronic pain symptoms in December 2008. The claimant reported left foot pain and stated the pain was "moderately controlled" by her current regimen. Dr. Mitchell's treatment notes indicate he believed she was able to function and perform small tasks and activities of daily living. Dr. Mitchell diagnosed the claimant with lower extremity RSD. In March 2009, the claimant reported she continued to have no side effects from her medication regimen and indicated that a podiatrist had fitted her with a left foot boot that was helping her. She also reported she weaned herself off one of her medications. (Exhibit B6F) A progress note from April 2009 indicated the claimant continued feeling better. (Exhibit B 13 F) Dr. Mitchell diagnosed the claimant with osteoarthritis, bursitis, sacroiliitis, and lumbar radiculitis between May and June 2009. (Exhibit B8F) The claimant presented to her primary care provider, Glenn Welcker, M.D., in July 2009. In his review of systems, Dr. Welcker noted the claimant had no pain in her extremities. (Exhibit BI2F) Dr. Mitchell diagnosed the claimant with lumbar degenerative disc disease in August 2009. (Exhibit BIIF).

The claimant testified that she has suffered from RSD for many years and also has sleep apnea and high blood pressure. She stated that she has used a stimulator in her back since 2000 that helps her RSD, but does not help her back pain or hip pain. She testified that her pain medications make her sleep for an hour to an hour and a half after she takes them. According to the claimant, her husband performs all the housework and she spends most of her day sitting and watching television. The claimant testified that she can stand or walk for 15 to 20 minutes with the assistance of a quad cane and can sit for 15 minutes at a time. She stated her most comfortable position was lying in her bed.

[R. 21-22.]

During his step 2 pain analysis, however, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they are inconsistent with the determined RFC. [*Id.*]   The ALJ explained that:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the

22

above residual functional capacity assessment. The claimant's allegations of complete disability are inconsistent with her own report of reducing her pain medication and her testimony regarding the efficacy of the stimulator on her RSD. Further, although the claimant testified she cannot sit for more than 15 minutes at a time, she also testified that she spends her day sitting and watching television.

The medical records for the period in question indicate that the claimant's pain actually improved during the period and she had fewer symptoms than before. Treatment records reflect that with a change in pain medication and adherence to use of her CPAP machine, the claimant had no pain, fatigue, or depression. (Exhibit B3F) The claimant's treating physician noted that the claimant's pain was moderately controlled and that she could able to function and perform small tasks and activities of daily living. (Exhibit B6F).

I have given great weigh to the claimant's treating physicians assessments of her pain during the period in question, and in particular to Dr. Mitchell's opinion that the claimant was able to function and perform small tasks and activities of daily living. Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Hines v. Barnhart*, 454 F.3d 559 (4th Cir. 2006). Not only does Dr. Mitchell have an extensive treatment relationship with the applicant, his opinion is supported by the treatment notes of Dr. Barfield and Dr. Welker indicating the claimant had attained effective pain relief.

[R. 22-23.]

### Analysis of ALJ Decision

Upon reviewing the ALJ's decision regarding Plaintiff's pain, the Court does not find that the ALJ conducted an improper credibility analysis, or that his decision otherwise reflects a failure to properly consider the subjective testimony and evidence in this case. To the contrary, the ALJ sufficiently explained his reasoning for discounting Plaintiff's claim of complete disability due to pain. The ALJ expressly evaluated Plaintiff's pain complaints in accordance with the two-step process outlined in *Craig v. Chater*; and, likewise, the ALJ considered the relevant factors for evaluating the same as outlined in 20 C.F.R. §

23

404.1529(c)(3). Specifically, the ALJ discussed Plaintiff's medical treatment and her physician's statements regarding her ability to perform small tasks and activities of daily living. The ALJ also considered Plaintiff's reports of pain improvement from prescriptions and injections, as well as her ability to wean herself off of pain medications with continued improvement of symptoms during the relevant time period. In summary, the ALJ's decision reflects that he considered the full range of evidence alongside evidence of Plaintiff's testimony, complaints to providers, daily activities, and efficacy of her medication to make his conclusion about the severity of Plaintiff's condition and its impact on her ability to work.

Curiously, Plaintiff does not point to any evidence of record that contradicts or undermines the ALJ's findings. Plaintiff merely seeks to have the Court reweigh the evidence already considered by the ALJ; such an exercise is contrary to law. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Thus, the Court finds the ALJ's credibility analysis is supported by substantial evidence.

**Appeals Council Review**

Next, Plaintiff argues that the Appeals Council erred because it failed to apply the treating physician rule and appropriately consider her new evidence. Even after the ALJ renders a decision, a claimant who has sought review from the Appeals Council may submit evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. § 404.968; *see also id.* § 404.970(b) (stating that the Appeals Council will consider new and material evidence). In *Meyer v. Astrue*, the Fourth Circuit held that

> the regulatory scheme does not require the Appeals Council to do anything more than . . . "consider new and

> material evidence . . . in deciding whether to grant review."
> *Wilkins* [*v. Sec'y, Dep't of Health & Human Servs.*], 953 F.2d
> [93,] 95 [(4th Cir. 1991)]; *see also Martinez v. Barnhart*, 444
> F.3d 1201, 1207–08 (10th Cir. 2006) (finding "nothing in the
> statutes or regulations" requires the Appeals Council to
> articulate its reasoning when "new evidence is submitted and
> the Appeals Council denies review"); *Browning v. Sullivan*, 958
> F.2d 817, 822 (8th Cir. 1992) (rejecting contention that
> Appeals Council must "make its own finding" and "articulate its
> own assessment" as to new evidence when denying review);
> *Damato v. Sullivan*, 945 F.2d 982, 988–89 (7th Cir. 1992)
> (holding that "the Appeals Council may deny review without
> articulating its reasoning" even when new and material
> evidence is submitted to it).

662 F.3d 700, 706 (4th Cir. 2011) (footnote omitted).  However, the court went on to note,

> Although the regulatory scheme does not require the
> Appeals Council to articulate any findings when it considers
> new evidence and denies review, we are certainly mindful that
> "an express analysis of the Appeals Council's determination
> would [be] helpful for purposes of judicial review."  *Martinez*,
> 444 F.3d at 1207–08; *see also Damato*, 945 F.2d at 989 n.6
> (noting that in "fairness to the party appealing the ALJ's
> decision, the Appeals Council should articulate its reasoning"
> when it rejects new material evidence and denies review).

*Id.*

The Fourth Circuit then observed that a lack of additional fact finding by the Appeals

Council would not render judicial review impossible if the record contained an adequate

explanation of the Commissioner's decision.  *Id.* at 707 (citation omitted).  However, turning

to the facts of *Meyer*, the Fourth Circuit noted the evidence was not one-sided, and the

court "simply [could ]not determine whether substantial evidence support[ed] the ALJ's

denial of benefits."  *Id.*  Specifically, as to the opinion of the claimant's treating physician

submitted to the Appeals Council, "no fact finder ha[d] made any findings as to the treating

physician's opinion or attempted to reconcile that evidence with the conflicting and

25

supporting evidence in the record." *Id.* Consequently, the Fourth Circuit concluded the

case must be remanded for further fact finding because "[a]ssessing the probative value

of competing evidence is quintessentially the role of the fact finder," a job a reviewing court

"cannot undertake [] in the first instance." *Id.*

Pursuant to 20 C.F.R. § 404.970(b),

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Evidence is new "if it is not duplicative or cumulative." *Wilkins*, 953 F.2d at 96 (citing

*Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). "Evidence is material if there is

a reasonable possibility that the new evidence would have changed the outcome." *Id.*

When a claimant seeks to present new evidence to the Appeals Council, she is not

required to show good cause for failing to present the evidence earlier. *Id.* at 96 n.3.

### Appeals Council Review of Evidence

In its decision denying review, the Appeals Council stated that

> We also looked at medical records from Glen Welcker, M.D., dated November 26, 2009 through December 10, 2010; Jeffrey Garske, M.D., dated August 20, 2010; and Paul Mitchell, M.D., dated July 27, 2011. The Administrative Law Judge decided your case through March 31, 2009, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

[R. 1-2.] Plaintiff argues that the Appeals Council was unequivocally incorrect in finding that Dr. Mitchell's statement, which affirmatively states that Plaintiff is permanently disabled, referred to a later time and, thus, did not affect the ALJ's decision. [Doc. 13 at 3.] Plaintiff contends the "opinion of a claimant's treating physician is the principal as well as ideal source of evidence of a claimant's disability."

Dr. Mitchell's July 27, 2011 statement provides as follows:

> I am writing to summarize the care of Mrs. Sandra Manning from her initial visit at our Pain Clinic to date. Sandra is a very pleasant, but unfortunate 49-year-old, who was initially seen in our Pain Clinic by Dr. Michael Dellinger on March 25, 2008. She was referred to our Pain Clinic by Glenn Welder, M.D., her primary care physician. At the time, Mrs, Manning had been evaluated by a Pain Clinic in Beaufort, South Carolina, specifically Dr. Karen Eller. She has also been evaluated by Dr. Edisto, orthopedics, Jeffery Holliman, M.D. She had initial diagnosis upon referral to our Pain Clinic of reflex sympathetic dystrophy of her lower extremity along with bilateral knee pain, right hip pain, and left shoulder pain. She on initial referral to our clinic had had a spinal cord stimulator placed by Dr. Karen Eller for her intractable reflex sympathetic dystrophy of her left lower extremity. She has had evaluations by four pain physicians, one orthopedic physician, and her primary care physician, all referring to the pain in her left lower extremity as reflex sympathetic dystrophy. Mrs. Manning has been treated by our Pain Clinic since 2008 with management of her spinal cord stimulator and injections of her sacroiliac joints done in 2009. Her right hip also were [sic] done in 2009. A series of spine injections done in 2009, along with oral anti-inflammatory medications and narcotic medications. She has also had knee injections in 2010 and then referred for additional orthopedic evaluation to Dr. Jeffrey Ganske in July 2010. She continues to be able to function somewhat with an implanted dorssal column spinal cord stimulator, but has periodic "flare-ups" as documented on April 1, 2011, where she felt like her knee was "on fire."
>
> Mrs. Manning is currently managed for her intractable back pain, hip pain, knee pain, and leg pain with spinal cord stimulation, but also with oral narcotics. She has been taking pain medications for approximately four years. Her current regiment of pain medication includes 60 mg of Morphine twice a day and 15 mg of oxycodone every six hours as needed. I feel that it is unrealistic to expect Mrs. Manning to return to any type of gainful employment. I would anticipate that she would miss over four days of work per month related to doctors' visits and flare-ups of her pain symptoms. In

addition, the treatment of her chronic pain symptoms with opioid medications renders her unable to drive and maintain focus on tasks that would be necessary for gainful employment.

[Doc. 13-1.]

### *Analysis re: Appeals Council's Review*

Considering the ALJ's decision in light of the new evidence, the Court has failed to discern a basis for remanding this case for further fact finding because the new evidence does not appear to have any bearing upon whether the Plaintiff was disabled during the relevant time period addressed in the ALJ's hearing decision.[8]   *See* 20 C.F.R. § 404.970(b); *Reichard v. Barnhart*, 285 F.Supp.2d 728, 733 (S.D.W.Va.2003) (citations omitted)(The requirement that new evidence must relate to the period on or before the date of the ALJ's decision, "does not mean that the evidence had to have existed during that period. Rather, evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time.").  Although Plaintiff attempts to describe Dr. Mitchell's July 27, 2011, opinion as relating back to the beginning of Plaintiff's treatment relationship, the "new" evidence presented clearly relates to the time period after

---

[8]The Court notes that the records submitted to the Appeals Council are all dated after Plaintiff's date last insured of March 31, 2009, and in order to receive benefits, claimant must establish that she was disabled prior to his date last insured.  *See, e.g.*, *Johnson v. Barnhart*, 434 F.3d 650, 655–56 (4th Cir. 2005) (citing 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a)).  The Court notes, however, that "an ALJ must give retrospective consideration to medical evidence created after a claimant's last insured date when such evidence may be 'reflective of a possible earlier and progressive degeneration.'" *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 345 (4th Cir. 2012) (quoting *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)).  Further, "retrospective consideration of evidence is appropriate when 'the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with her earlier symptoms." *Id.* at 341 (quoting *Moore*, 418 F.2d at 1226).  Here, the additional records document treatment Plaintiff received from a physician she saw before her date last insured for conditions that were diagnosed prior to her date last insured.  However, the additional treatment, which occurred between November 2009 and July 2011, was rendered at least 8 months after Plaintiff's insured status expired on March 31, 2009.  Furthermore, Plaintiff appears to rely solely on Dr. Mitchell's July 2011 letter in seeking to overturn the ALJ's decision.  Accordingly, that the records are dated a minimum of eight months after Plaintiff's date last insured, and that Dr. Mitchell's opinion letter is dated 28 months after the date last insured, with no specific statement that the opinion relates back to the relevant time period, is a sufficient basis to conclude no further fact finding is necessary.

March 31, 2009, the date last insured.  For example, Dr. Mitchell speaks of periodic "flare-ups" which were  documented on April 1, 2011, and "a current regiment of pain medication" which includes Morphine and oxycodone.  Furthermore, the law is clear that not every opinion offered by a treating source is entitled to deference.

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work.  Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.  Such opinions on these issues must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).  Thus, the Court finds the ALJ's decision is supported by substantial evidence, even in light of the new evidence presented to the  Appeals Council.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 4, 2014
Greenville, South Carolina

29